In re WALLERSTEIN (two cases).

Patent Appeals Nos. 2777, 2778.

Court of Customs and Patent Appeals.
Nov. 27, 1931.

LENROOT, Associate Judge, dissenting.

Cleon J. Sawyer and Philip B. Philipp, both of New York City, for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

These two cases were briefed and argued together, and, although there is a separately printed record in each case, both may be disposed of in a single opinion.

The subject-matter of both appeals is an invertase preparation, and both include claims for the articles and also for the methods of producing same.

In case No. 2777, there were six claims, of which 1 and 6 are illustrative.

"1. An invertase preparation of a determined inverting power, said preparation having incorporated therein a sugar in suffi-cient amount to form a protective agent for the invertase."

"6. The method of making an invertase solution which consists in preparing an acqueous solution of invertase containing approximately 10 per cent. solids and incorporating therein sucrose in sufficient amount to raise the percentage of solids to approximately 70 per cent. to 80 per cent."

Claim 1 is the broad claim including any protective sugar; claim 2 defines the protective sugar as sucrose; claims 3 and 4 define the product as a solution; claim 5 defines it as a solution containing from 70 per cent. to 80 per cent. solids, of which solids 60 per cent. to 70 per cent. results from the sugar incorporated therein; claim 6 covers the method.

In case No. 2778 each of the claims relates to a preparation of invertase in a dry form. Nos. 1 and 4 are typical:

"1. A preparation of invertase in dry form containing invertase of a determined inverting power and a protective sugar."

"4. The method of making a preparation of invertase in dry form containing invertase of a determined inverting power, which consists in making a concentrated solution of invertase, adding a sufficient amount of a sugar which is substantially non-hygroscopic and which is not converted by the invertase, such as dextrose or lactose to form a stiff dough, and drying at temperatures not exceeding 50° C."

In 2778, as in 2777, claim 1 is the broad claim including any protective sugar; claim 2 is limited to use of dextrose or lactose; claim 3 covers broadly the method of making the dry product; claim 4 limits the process of claim 3 to drying the product at temperatures not exceeding 50° C.

In both cases all the claims were disallowed by the Examiner whose decisions were affirmed by the Board of Appeals of the Patent Office, and, from the decisions of the latter, the appeals to this court were taken.

In both cases the references cited by the Examiner and Board of Appeals were:

A. Patent to Harris entitled "Vitamine Preparation," being No. 1,540,883, issued June 9, 1925.

B. Pages 140 to 145 of Scientific Preparation of Food, Rector (Wiley & Sons, 1925).

In the brief in behalf of appellant it is said:

"Applicant has discovered that adding to an invertase solution certain sugars, including sucrose, lactose and dextrose, prevents

their deterioration by heat, as well as bacterial decomposition. Sucrose preferably is used for preparing a standardized invertase solution, the best results being attained with sucrose in certain quantities.

"The invertase inverts some of the sugar, thus increasing the solids in the invertase solution, and by using the required amount of sugar, and preferably lactrose or dextrose, and by special treatment, applicant is enabled to produce a standardized preparation of invertase in the convenient form of a dry powder."

The opinions of the Board of Appeals in the respective cases are, in thought, and largely in language, the same. From the opinion in case No. 2777, we quote the following:

"The patent to Harris discloses that similar inversion bodies and enzymes, specifically the vitamines, have been preserved in this manner.

"Both the vitamine referred to by Harris and the particular invertase disclosed by applicant are prepared from yeast and while it is clear that they are not identical they seem to be very similar in nature. They are both of the broad class of enzymes and both are derived from the same source.

"Under such circumstances it is considered that while Harris does not disclose treatment of the same material he discloses the treatment of a material so similar as to clearly suggest that the same treatment would apply to the material disclosed by applicant. It would require only a simple test to determine this fact. It is found further that the particular proportions so far as may be determined from applicant's specification come within the limits of those given by Harris."

The citation to Rector, as we understand it, is simply and only because of that work showing the preservative properties of sugar.

It seems to us that the first question to be determined is whether the invertase preparation for which the patent is sought is so similar in its nature to the vitamine preparation for which patent No. 1,540,883 was issued to Harris as to render the latter an anticipation, in the sense of the patent laws, of the former.

The Board of Appeals hold, supra, that they are "not identical," but "seem to be very similar in nature," both being prepared from yeast, and in another place in the opinion apparently treats "vitamines" as being similar to "enzymes."

The answer of the Examiner to applicant's appeal to the Board of Appeals says, "It is appreciated that vitamines and invertase have marked distinguishing characteristics," but expresses the opinion that Harris' patent is " * ‛ ‛ a good reference as disclosing the use of sugars in a relation similar to that claimed by applicant."

Funk & Wagnall's New Standard Dictionary gives the following definitions:

"Invertase. Chem. An enzym capable of splitting sucrose and related sugars; found in certain plants and the intestines of animals; specif., a ferment which inverts cane-sugar into dextrose and levulose.

"Vitamin
"Vitamine

A nitrogenous substance ($C_{16}H_{18}O_6$) found in some nucleic acids in the form of pyrimidine bases, as cytosin, minute quantities of which are essential to the diet of man, birds, and other animals.

"Enzym
"Enzyme

Chem. An unorganized or chemical compound of vegetable or animal origin that causes chemical transformation, as hydrolysis, oxidation, coagulation, synthesis, reduction, etc. * * *"

Dictionaries and encyclopedias devoted exclusively to chemistry, such as Kingzett, Hackh, and Gardner, have been examined, and the definitions given in them accord with those above quoted. Kingett says:

"Invertase (Invertin, Zymase)—An enzyme present in ordinary yeast, which, apart from the yeast cells themselves, has the power of converting (inverting) cane sugar into glucose and fructose by hydrolysis to the reported extent of 200,000 times its own weight of cane sugar without then losing its effect. * * *"

It seems, therefore, that an enzyme, whose chemical structure, the Encyclopedia Britannica (14th Ed.) vol. 8, p. 631, states "is not yet known," is a fermenting agency, and invertase is a species of enzyme. It is present in yeast, and yeast is an ingredient used in making the vitamine of the Harris patent.

It does not follow, however, that, in the sense of the patent law, simply because both products are present in yeast, one is an an-

ticipation of the other, or that the method used in the production of one is an anticipation of the method used in the production of the other.

The brief of appellant contains a comparison of vitamines and invertase tending to show their dissimilarity. We understand this to have been prepared from statements made in scientific publications as to the nature of these preparations and its correctness is not challenged in the hearing before us. We quote same in full:

| "Vitamines. | "Invertase. |
|---|---|
| "A stable substance whose activity is not lessened or destroyed by relatively high temperature, i. e., temperatures of 50° C. and is not destroyed by boiling. | "An unstable enzyme or ferment the activity of which is destroyed or lessened by high temperatures, i. e., temperatures of 50° C. or over. |
| "Is not affected within wide limits by acids. | "This enzyme can only stand acidity within very narrow limits. |
| "Raising the temperatures does not increase its activity. | "Activity is increased by raising the temperatures till optimum is reached, and is then quickly destroyed. |
| "Has no action on sugar, these substances being neutral toward each other, and the sugar acting only as a filler." | "Inverts cane sugar into invert sugar; as dextrose and laevulose." |

Accepting this as correct, and considering the question in the light of the definitions quoted, supra, we feel that the tribunals of the Patent Office fell into error in holding the patent of Harris to be an anticipation of the claims of appellant's applications.

The publication entitled "Scientific Preservation of Foods," cited simply to show that the preservative qualities of sugar are well known, does not seem to us to affect the merits of the controversy.

No question has been raised as to applicant being entitled to patents upon his claims in both cases, except for the alleged anticipation, and, since the articles are so vitally dissimilar as that the references cited are not regarded by us as anticipations, it follows that, in our opinion, the patents he seeks should issue.

Accordingly, the decisions of the Board of Appeals affirming the decisions of the Examiner are reversed in both cases 2777 and 2778.

Reversed.

LENROOT, Associate Judge, dissenting.